
# Hill Wallack LLP
Attorneys at Law

21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543-5226
609.924.0808 *main* | 609.452.1888 *fax*

www.hillwallack.com

Direct Dial: (609) 734-6392

November 16, 2018

**Via ECF**
Honorable Michael B. Kaplan, U.S.B.J.
United States Bankruptcy Court
Clarkson S. Fisher Federal Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    **In re: Michael and Kimberley Goione
           Case No. 18-26805 (MBK)
           Amboy Bank's Motion to Determine Amount Due on Secured Claim**

Dear Judge Kaplan:

      This law firm represents Amboy Bank ("Amboy"), a creditor in this case having had first and second mortgage liens on the Debtors' real property located at 46 Clay Street, Fair Haven, New Jersey 07704 (the "Property"), which has since been sold. Amboy's liens now attach to the sale proceeds from the Property being held by the Debtors' attorney. Amboy's Motion and the Debtors' Cross Motion are to determine the amount of interest Amboy is entitled to from the sale of the Property and the allowance for additional attorneys' fees and costs incurred by Amboy in bringing the within Motion and opposing the Cross Motion.

      Please accept this letter memorandum, in lieu of a more formal brief, along with the accompanying Certification of Mark A. Roney, Esq. (the "Roney Cert."), in reply and opposition to the Cross-Motion to Fix Amboy's claim filed by the debtors, Michael and Kimberley Goione (the "Debtors"), which includes opposition to Amboy's Motion to Determine the Amount Due on its Secured Claim (the "Motion"). The Motion should be granted, and the Cross-Motion denied, based upon the application 11 U.S.C. §§ 502(b) and 506(b) and the fact, as admitted by the Debtors, that New Jersey Court Rule 4-42-11(a)(iii) does <u>not</u> require the perfunctory application of the legal rate of interest on all judgments. The graveman of the Motion is not that Amboy should be permitted to amend the Final Judgment entered in the Foreclosure Action[1], but that this Court has the statutory and inherent authority to determine the appropriate rate of interest to be paid on Amboy's secured claim. Based upon the inequitable actions of the Debtors unreasonably delaying the sheriff's sale of the Property through three bankruptcy filings since August 25, 2017 and the application of Section 1322(b)(2) of the United States Bankruptcy Code (the "Code"), which prevents the Debtors from impairing Amboy's claim, Amboy is entitled to enforce the terms of the Loan Documents and recover the full rate of default interest due from the Debtors.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Amboy's moving papers in support of the Motion.

Hon. Michael B. Kaplan, U.S.B.J.
November 16, 2018
Page 2

      Tellingly, the Cross-Motion does not address the application of Section 506(b) of the Code to this matter or that under Section 1322(b)(2) of the Code the Debtors cannot impair Amboy's liens in this Chapter 13 case. Instead, the Debtors attempt to deflect the Court's attention from the substantive issues raised in the Motion by focusing on Amboy's alleged inequitable conduct and trying to differentiate the cases that admittedly establish this Court's ability under state law. These efforts fail in their intended effect, as the basis of the Motion does not turn on the actions of Amboy in any way but, rather, the inequitable conduct of the Debtors and how their substantial delays have prevented a full recovery by Amboy under the Loan Documents.

      Before directly addressing the legal arguments in the Cross-Motion, Amboy believes it is important for the Court to be aware of the amount in dispute relating to interest. As indicated in Amboy's payoff letter, dated October 5, 2018, provided to the Debtors, the total amount of interest was listed as $115,083.37 (comprised of $108,778.56 in interest due on the 2008 Note and $6,304.81 in interest due on the November 2010 Revolving Note). This interest was calculated at the default rate of 8.0% per annum for the 2008 Note and 8.5% for the November 2010 Revolving Note. The payoff amount included credit for the payments received in the Second Bankruptcy. If interest is calculated at the rates set for the in the Affidavits of Amount Due (as discussed below) and then at the legal rate from January 26, 2017, the commencement date stated in the Final Judgment of Foreclosure for legal interest, the amount of interest due, after credit for the payments received, equals $55,142.33 (Interest in the aggregate amount of $68,807.42 on the principal to January 26, 2017 and $38,212.13 at the legal rate thereafter to November 15, 2018).[2] This amount is based upon total interest of $107,019.55 less payments of $51,877.22[3] for a total due of $55,142.33.

      Initially, the Debtors assertion of judicial estoppel is wholly inapplicable to the Motion. That doctrine is only applicable in circumstances where a party <u>successfully</u> argued a legal position in a case (or a prior case) and later attempts to change its position. See <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 386 (App. Div. 1996). Moreover, the application of the doctrine "is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" <u>Kimball Intern., Inc. v. Northfield Metal Products</u>, 334 N.J. Super. 596, 608 (App. Div. 2000) (*quoting* <u>Ryan Operations G.P. v. Santiam–Midwest Lumber Co.</u>, 81 F.3d 355, 365 (3d Cir. 1996)).

      A review of the prior actions not only shows that Amboy never "successfully" asserted that its right to interest was limited to the non-default rate under the Loan Documents, but that Amboy <u>asserted and was granted the default rate</u> in the Foreclosure Action. See the Certification of Joseph M Casello, Esq. (the "Casello Cert.") at Exhibit A, p. 6 (the Affidavit of Amount Due for the November 2010 Revolving Note) and the Roney Cert. at Exhibit A, p. 5 (the Affidavit of

---

[2] There is a minimal additional amount which counsel for the Debtors is holding in reserve relating to the commission due the Monmouth County Sheriff. Debtors have paid Amboy the commission amount due on the principal balance received, but not for any interest. Once the interest amount is determined, the additional Sheriff's commission can be calculated between counsel.

[3] This figure is taken from the Debtors' brief.

Hon. Michael B. Kaplan, U.S.B.J.
November 16, 2018
Page 3

Amount Due for the 2008 Note).[4] In these Affidavits of Amount Due filed in the Foreclosure Action, Amboy asserted default interest, as applicable, and such interest was ultimately included in the Final Judgment (even though the amount of the Final Judgment is not at issue before the Court). Amboy's filed Proof of Claim in the Second Bankruptcy reflects the amounts due on the Loan Documents, as per their terms and not based on the Final Judgment (based upon the fact that Section 1322(c)(1) permits a debtor to cure their arrearages, even after judgment has been entered, as if no default ever occurred), including interest at the non-default rate of 5.0% on the 2008 Note and Amboy's prime rate, plus 1.0%. See Exhibit C to the Casello Cert. The Second Bankruptcy was dismissed without any determination as to the validity of Amboy's claim. Thus, there can be no applicable of judicial estoppel against Amboy requiring it to accept the legal rate of interest as asserted by the Debtors. If anything, Amboy has been consistent in asserting its right to the default rate of interest and, at least, the contract rate of interest at no less than 5.0%.

As to the merger doctrine being applicable to this matter, the Debtors' reliance on In re Roach, 824 F.2d 1370 (3d Cir. 1987) is misplaced. The decision in Roach is factually and legally distinguishable from the matter at hand. In Roach, the Debtors proposed a plan to cure their mortgage defaults even though judgment had been entered and the property sold at sheriff's sale. The courts found that the Debtors' proposed plan would impermissibly modify the mortgagee's rights (the case is pre-adoption of Section 1322(c)(1)).and, regardless, the Debtors had no right to cure after a sheriff's sale. Here, not only has there been no sale, but the application of Sections 1322(b)(5) and 1322(c)(1) forced Amboy in the Second Bankruptcy to accept payments at the contract rate and allowed the Debtors to propose a plan (which they could not effectuate) to cure their defaults notwithstanding the fact that Final Judgment was entered. To be sure, the decision in Roach was overruled by the enactment of Section 1322(c)(1) as expressly stated by the Third Circuit in In re Connors, 497 F.3d 314, 322 (3d Cir. 2007) ("Congress added subsection (c)(1) to overrule Roach and establish a uniform time-the "foreclosure sale"-for expiration of a debtor's federal right to cure.").

Moreover, the doctrine of judicial estoppel cannot overcome the fact that this Bankrutpcy Court is solely vested with the power and the authority to determine the rate on interest to be applied on Amboy's claim pursuant to Sections 502(b) and 506(b) of the Code, this Court has the juridiction and authority to apply an appropriate rate of interest on Amboy's claim based upon principles of equity. In this case, the Court would be fostering an inequitable result if the Debtors were permitted to benefit from their continuing delinquencies and delays, while Amboy has had to wait, at least, fourteen (14) months to recover the obligations due and owing from the Debtors.

Presently, Amboy is asking the Court to apply Section 506(b) to provide interest at the default rate based upon (a) the statutory right to an unimpaired secured claim in this bankruptcy case and, alternatively, (b) the Debtors' conduct post Final Judgment is inequitable and

---

[4] To this point, Amboy could assert that the doctrine of res judicata applies and the Debtors are barred from asserting that the default rate should not be applied on the construction loan and mortgage and that the rate is unreasonable under Metlife Capital Fin. Corp. v. Washington Ave. Assoc., L.P., 159 N.J. 484 (1999). What's more, the case in Metlife held that a default interest rate of 3.0% (which is the rate here) was reasonable, as were late fees of 5.0%. Id. at 493-96.

Hon. Michael B. Kaplan, U.S.B.J.
November 16, 2018
Page 4

prejudicial to Amboy and, therefore, there is no legal mandate that requires this Court to apply the legal rate of interest to Amboy's claim.

There can be no reasonable dispute in this case that the Debtors unjustifiably delayed Amboy from recovering on its claims at issue in this case. The Debtors defaulted in early 2016 and took no "action" to rectify their defaults until the First Bankruptcy in August of 2017. However, that case was dismissed in <u>less than a month</u> and the Second Bankruptcy did not fare much better. The Debtors failed to make post-petition payments resulting in Amboy obtaining stay relief in February 2018. The relief was delayed, and that case was on life support, until August 2018 when the financial reality that the Debtors lacked the financial wherewithal to fund a viable Chapter 13 plan and the case was dismissed. It was not until the present case, more than a year and a half after the Final Judgment was entered and a year after the First Bankruptcy that the Debtors sought to sell the Property. In the interim, their debts all accrued interest, the Debtors incurred additional debts in the form of real estate taxes (of approximately $75,000 through the 4th quarter 2018) and attorneys' fees and costs, at least. Had Amboy been able to go to sale in August of 2017, it could have realized a repayment of the debt owed to it and used that money or property to its benefit, and the Debtors would have been relieved of their obligations to pay property taxes and the amounts due to Amboy, thereby allowing them to use the funds on hand to repay other debts, including that of the Internal Revenue Service. In short, the current situation is solely the result of the actions, or more accurately, inactions, of the Debtors in failing to take action since 2016 to address their deteriorating financial stability.

It is these actions, which were not present in January 2017 when the Final Judgment was entered, or at the time the proof of claim was filed in the Second Bankruptcy, that give rise to Amboy's right to default interest under Sections 506(b) and 1322(b)(5). The state court cases cited in Amboy's moving papers do not require Amboy, or any other creditor for that matter, to anticipate the future inequitable conduct of defendants (which may never materialize) when applying for judgment. Rather, the cases reflect the inherent injustice in allowing a debtor to benefit from his or her defaults to the detriment of an oversecured creditor. It is simply not equitable or right for the Debtors to manipulate the Code as both a shield against Amboy timely asserting its legal rights and a sword to slash the amounts due to Amboy while wholly ignoring the factual circumstances that created the Debtors' present circumstances.

Finally, Amboy is without question entitled to recover its attorneys' fees and costs relating to the present Motion and Cross Motion. Amboy provided Debtors with the payoff on Friday, October 5, 2018 via regular mail and email to their attorney. Counsel engaged in communications as early as October 9, 2018. However, counsel went silent until <u>October 24, 2018</u> when he advised this office he was going to submit a proposed order authorizing the Property's sale that would authorize him to escrow the full amount of the proceeds. Amboy was not dilatory in presenting its legal position to the Debtors on this issue. It was not until more than two weeks after Amboy asserted its position that the Debtors' counsel raised the issue with the Court the afternoon of October 25, 2018, after several emails on the issue – and after counsel originally advised that interest was the only issue, but if he had to make a motion he was going to challenge the entire payoff. Again, the present circumstances for the posture of the Motion are not the result of Amboy's inactions (or actions). Rather, counsel for the Debtor waited until the

Hon. Michael B. Kaplan, U.S.B.J.
November 16, 2018
Page 5

proverbial eleventh hour to raise the issue, forcing Amboy's hand by stating he was going to challenge all of the charges in the payoff and hold the sale proceeds indefinitely – further prejudicing Amboy's right to recovery in this case. It is not Amboy that is responsible for this delay or unnecessarily raising the issue to the Court via this Motion – the Debtors were going to file their own motion regardless. Accordingly, there is no reason to deny Amboy its contractual right to attorneys' fees and costs relating to the Motion and Cross Motion as permitted by the Loan Documents.

For these reasons, and those set forth in Amboy's moving papers, it should be permitted to collect the full amount of interest due and owing on the Loan Documents, at the default rates, and the sums held reflecting those amounts – plus the additional sum that would be due to the Monmouth County Sheriff as a result of same.

Respectfully submitted,
HILL WALLACK LLP

Mark A. Roney

Encl.
cc:    Joseph M. Casello, Esq. (via ECF and Electronic Mail – w/encl.)