

# Hill Wallack LLP
Attorneys at Law

21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543-5226
609.924.0808 *main* | 609.452.1888 *fax*

www.hillwallack.com

Direct Dial: (609) 734-6392

December 13, 2018

***Via ECF Only***
Honorable Michael B. Kaplan, U.S.B.J.
United States Bankruptcy Court
Clarkson S. Fisher Federal Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    In re: Michael and Kimberley Goione
            Case No. 18-26805 (MBK)
            Amboy Bank's Motion to Determine Amount Due on Secured Claim (the "Motion")

Dear Judge Kaplan:

      This law firm represents Amboy Bank ("Amboy"), a creditor in this case having had first and second mortgage liens on the debtors' real property located at 46 Clay Street, Fair Haven, New Jersey 07704 (the "Property"), which has since been sold pursuant to an Amended Order Authorizing Sale of Real Property Pursuant to 11 U.S.C. §363(b) & (f), filed on October 30, 2018 **[Docket No. 43]**. Amboy hereby submits this letter memorandum in response to the matters raised by the Court in the supplemental hearing on the Motion, and the related cross-motion filed by the debtors Michael and Kimberley Goione (the "Debtors"), on November 29, 2018.

      It is without doubt that this Court has express jurisdiction and full authority to determine Amboy's claim under Sections 502 and 506(b) of the United States Bankruptcy Code (the "Code"). Contrary to the Debtors' arguments, Amboy's claim in this case is not limited to the amount of the Final Judgment[1], as that judgment - as an *in rem* remedy only - constitutes a portion of, but not all of, Amboy's "right to payment" under the Loan Documents. See 11 U.S.C. §101(5)(A "claim" is the right to payment). The Debtors, by refusing to pay Amboy interest to which it is entitled under the Loan Documents, have objected to Amboy's claim and therefore this Court can rule upon same. As a result, the Court can consider Amboy's legal rights and remedies beyond those included in the Final Judgment as well as the factual circumstances of this case in determining the amount due on Amboy's claim.

      During the supplemental hearing, the question was presented as to whether a Bankruptcy Court had the authority to "amend" the Final Judgment to provide for interest above the legal rate set forth therein. However, in determining the amount of Amboy's claim, including the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Amboy's prior moving papers in support of the Motion.

Hon. Michael B. Kaplan, U.S.B.J.
December 13, 2018
Page 2

interest to be allowed, the Court is not "amending" the Final Judgment or taking any action other than enforcing the rights of Amboy and the Debtors pursuant to the Loan Documents and New Jersey law. In doing so, it is clear that the Final Judgment does not encompass the full scope of the duties and obligations between Amboy and the Debtors and Amboy's claim cannot be appropriately calculated without consideration of all its legal rights arising from the Loan Documents.

In this case, Amboy's right to payment in this case is not based solely on the Final Judgment. Rather, Amboy has a "right to payment" emanating from the 2008 Note and the November 2010 Revolving Note (the "Notes") in addition to those rights accorded it under the Final Judgment. While Amboy sought to enforce its rights to foreclose the 2008 Mortgage and the June 2009 Revolving Mortgage (and with the 2008 Mortgage collectively referred to as the "Mortgages") and seek recovery of the amounts due and owing on the Loan Documents through the sale of the Property pursuant to the Foreclosure Judgment, that election of a remedy does not cause a forfeiture of its rights under the Loan Documents. Moreover, the Property was not sold at a Sheriff's Sale but pursuant to the Bankruptcy Code. As a result, viewing Amboy's rights to only those possessed within the Final Judgment would be impermissibly restricting Amboy's remedies under the Loan Documents and prejudicing it for the delay caused solely by the Debtors.

The fact that the Final Judgment does not constitute the true measure of Amboy's claims is well-rooted in New Jersey law. Initially, New Jersey Court Rule 4:42-9 limits the recovery of attorneys' fees in a foreclosure even though no such limitation exists in a civil action against an obligor under a note or guaranty. Further, and as noted above, the Final Judgment is an *in rem* remedy which sets forth the amount and scope of recovery that Amboy can recover from the Property through a Sheriff's Sale under state law – not the Debtors from other judicial means, including a sale under Section 363 of the Code. This limitation is evident on the face of the Final Judgment, as its states:

> ...ORDERED AND ADJUDGED <u>that so much of the said mortgaged premises, as will be sufficient to raise and satisfy the said Mortgages, interest and costs of the Plaintiff</u>, be sold and that an execution does issue for that purpose, out of this Court, directed to the Sheriff of the County of Monmouth, commanding him to make sale, according to law, of <u>so much of the mortgaged premises as will be sufficient to satisfy the said Mortgages, interest and costs of the Plaintiff</u> that he first pay out of the proceeds of the sale to the Plaintiff or its attorneys its debt, interest and costs;

See Exhibit B to the Cassello Cert. (emphasis added).

This limitation on recovery as against the Property is also consistent with well-established New Jersey law which recognizes that the Mortgages are only security for the repayment of the debt evidenced by the Notes – the Mortgages themselves are not the debt instruments. See Gotlib v. Gotlib, 399 N.J. Super. 295 (App. Div. 2008). See also, *generally*,

N.J.S.A. 12A:3-101 et seq. and 12A:9-101 et seq. (New Jersey's adoption of the Uniform Commercial Code). It is for this reason, among others, that the Debtors' obligations owed to Amboy under the Notes are not limited to the rights stated in the Final Judgment. For example and without limitation, Amboy is permitted not only to initiate a deficiency proceeding to collect additional sums due and owing not recovered from the Property, but (in certain circumstances) also simultaneously litigate a foreclosure action and note suit against the individual borrowers. If a creditor's rights were limited to a foreclosure judgment, then these actions would be impermissible. These collective rights and remedies are also incorporated in the Loan Documents and were agreed to by the Debtors. They are included in, among other things, the provisions that provide Amboy's remedies under the Loan Documents are cumulative and concurrent and that Amboy has sole discretion to enforce the Loan Documents and recover the amounts due and owing from any source in whatever order it deems appropriate. See Exhibit A (at ¶¶8 and 9), Exhibit B (at p. 10) and Exhibit E (p. 1) to the Bleier Cert. In New Jersey, there is no election of remedies whereby the institution of a foreclosure action cuts off a creditor's rights to seek a deficiency action for the remaining amounts due under the note after the Sheriff's sale.

On this point, New Jersey has specific statutes that acknowledge a creditor's right to a deficiency action post-foreclosure. See N.J.S.A. 2A:50-2 ("all proceedings to collect any debt secured by a mortgage on real property, shall be . . . [f]irst, a foreclosure of the mortgage; and [s]econd, an action on the bond or note for any deficiency, if, at the sale in the foreclosure proceeding, the mortgaged premises do not bring an amount sufficient to satisfy the debt, interest and costs."). In commercial settings, and certain second mortgage lien situations, a lender has the right initiate a civil action against obligors personally at the same time a foreclosure of the mortgage is proceeding – further evidencing the separate nature of the forms of relief available to a creditor in a secured transaction. See N.J.S.A. 2A:50-2 and N.J.S.A. 2A:50-2.3.

Amboy not only possesses these additional rights under state law outside of the Foreclosure Judgment, but other state law also provides that Amboy's rights under the Mortgages is not completely extinguished upon the entry of the Final Judgment. It has long been the case that a secured creditor has the right to amend a final judgment of foreclosure to add amounts paid for taxes, insurance, and property preservation between the time of a final judgment of foreclosure and the date a property goes to Sheriff's sale. Specifically, under New Jersey law, specifically R. 4:50-1(f), the Superior Court has control over its judgments and retains the authority, on notice, to amend a judgment provided the amendment is equitable and there is no adverse effect on the rights of other parties. See Resolution Trust Corp. v. Griffin, 290 N.J. Super. 88, 92 (Ch. Div. 1994). In uncontested foreclosure cases, a motion to amend the final judgment for additional funds advanced under the obligation for items such as real estate taxes and insurance is "not unusual" and typically granted. Id. Such motions are generally granted at any time up to the occurrence of a Sheriff's Sale of the subject property. Id. Moreover, pursuant to R. 1:34-6, the Office of Foreclosure has recommended the entry of orders allowing mortgagees reimbursement for taxes, insurance, and "other amounts for the preservation of property." See Summit Business Capital Corp. v. Quinn-Woodbine Realty & Leasing Co., 2006 WL 1549791 *5 (App. Div., June 8, 2006) citing, and quotation from, Myron C. Weinstein, *Court Voids Post-Judgment Advances for Mortgagees*, 148 N.J.L.J. 176 (April 14, 1997). Even in a bankruptcy case post-final judgment, a creditor would have the right to obtain

Hon. Michael B. Kaplan, U.S.B.J.
December 13, 2018
Page 4

stay relief to seek to amend its final judgment for these additional costs as a matter of right and because they ultimately provide a benefit to a debtor's estate by preserving estate property and minimizing claims.

The Debtors have asserted that the application of New Jersey's "Merger Doctrine" somehow prevents Amboy from asserting its rights in this action. This is simply not the case. Primarily, the Merger Doctrine only applies to "extinguish" the Mortgages as a matter of New Jersey law, the doctrine does not, and cannot, extinguish the parties rights under the Notes or other agreements. This fact is undisputed based upon the rights afforded a creditor to simultaneously sue on the note and mortgage and/or seek a deficiency after a foreclosure action as discussed above. The Debtors' argument also fails because the Property was not sold at a Sheriff's sale – it was sold through a bankruptcy sale. As a result, this case is factually and legally distinguishable from bankruptcy cases discussing the Merger Doctrine like In re A & P Diversified Technologies Realty, Inc., 467 F.3d 337 (3d Cir. 2006). In A & P, a Chapter 11 was filed by a company where the creditor obtained stay relief, went to foreclosure sale, recovered the judgment amount plus its fees under R. 4:42-9, and then sought additional attorneys' fees and costs in the bankruptcy case. There, because the creditor had already incurred the attorneys' fees and costs sought in the bankruptcy case but not included them in its judgment against the subject property or otherwise preserved its rights to those fees, the Third Circuit found that the Merger Doctrine prevented the recovery of those fees because there was no other right to recoup those fees. That is not the case here. The Final Judgment was entered over a year before the present case, the vast majority of interest at issue accrued before this case, and there was no Sheriff's sale of the Debtor's Property.

Accordingly, under these authorities and legal principles, Amboy's right to payment from the Debtors is not limited to the amounts set forth in the Final Judgment. In determining Amboy's rights vis-à-vis the Debtors, the Court is analyzing all of Amboy's rights which include the Loan Documents, the Final Judgment, and equity, to determine the appropriate interest to be added to its claim in this case. The Court already has the statutory authority under Section 1322(b)(5) and (c)(1) to confirm a proposed plan of reorganization irrespective of the fact that a final judgment of foreclosure has been entered against a debtor – the instant Motion presents a scenario that is no different. In the alternative, if the Court rules that only the interest rate can be increased by the state court, then Amboy submits that it should be granted relief from the automatic stay to make its application before the Superior Court of New Jersey. Once that court makes a ruling on the rate of interest to be paid, the parties can present that resolution to this Court for further proceedings.

Amboy further believes, as a separate and independent basis for awarding default interest, that the Court has the authority to determine Amboy's claim under Section 1322(b)(2) as this case is no different substantively or factually than the "typical" Chapter 13 case – it's only procedurally "unique" because of the Debtors' prior actions of filing two (2) chapter 13 cases that had no chance of curing Amboy's defaults without a sale and their "eleventh hour" filing of this action and staying the Sheriff's sale. The Court should not take the Debtors' bait that this case is anything but a routine Chapter 13 case and divine complexities where none exist.

Hon. Michael B. Kaplan, U.S.B.J.
December 13, 2018
Page 5

Here, the Debtors have filed a proposed plan of reorganization in this Chapter 13 case **[Docket No. 29]**, proposing to: (a) make adequate protection payments to Amboy in the aggregate amount of $4,715.00 a month (which is the default rate of interest under the loan documents) and (b) sell the Property so that Amboy was "[p]aid in full at closing"]. Id. at Part 2(b) and Part 4(g). Upon the sale of the Property, which took place under the authority of Section 363 of the Code, it was – and remains – the Debtors intent to use the remaining sale proceeds to fund their plan of reorganization, after paying Amboy's claim. Id. at Part 1(c). Thus, in order to effectuate any plan of reorganization, Amboy's claim must be determined under the Code and in connection with the Debtors' proposed plan that must comply with Section 1322.

As a result, the Debtors cannot escape the application of Section 1322(b) merely because their plan has not yet been confirmed. In order for the Court to determine whether the Debtors have a feasible plan, it has to determine the amount of Amboy's claim, which directly affects the remaining amounts available to the Debtors to fund their proposed plan. At a minimum, if the Court chose not to require payment of Amboy's contract rate of interest, it would be conferring a windfall upon the Debtors which is not the purpose and intent of the Code, nor is it under New Jersey law if the Court determines to apply same.

Further, if the Court were to determine that the judgment rate of interest applied to Amboy's claim, it would be punishing Amboy for having efficiently asserted its rights with respect to the Debtors' undisputed defaults under the subject loan documents. In doing so, the Court would be de-incentivizing a secured creditor from obtaining a judgment in a foreclosure case by creating disparate treatment of secured creditors based solely upon whether a judgment existed or not at the time of a debtor's petition. As an example, if the Court were to determine Amboy's claim outside of the context of Section 1322, it would be creating a precedent where a secured creditor is treated differently in a bankruptcy case if the case is filed on the day before a foreclosure judgment is entered than if the debtor filed the day of, or the day after, a foreclosure judgment is entered. The Code does not contemplate, nor should it condone, the potential unequal treatment of a secured creditor that would merely because of the date of a debtor's filing – which treatment could be the subject of manipulation on the part of unscrupulous debtors. It is Amboy's position that the avoidance of this type of prejudice to a secured creditor – and the limitation on a debtor's ability to cure their defaults – was one of the reasons why Section 1322(c)(1) was enacted.

In sum, the Court is authorized by numerous sections of the Code to grant the relief sought by Amboy in the Motion. In granting Amboy the relief requested, the Court would be ruling in a manner consistent with the Code, the applicable authority governing the Debtors' bankruptcy case, and well within its power to the amount due on Amboy's claim in bankruptcy which power is not limited by the entry of the Final Judgment. Accordingly, the Motion should be granted in its entirety and the Cross-Motion denied.

Hon. Michael B. Kaplan, U.S.B.J.
December 13, 2018
Page 6

                                      Respectfully submitted,
                                      HILL WALLACK LLP

                                      Mark A. Roney

cc:    Joseph M. Casello, Esq. (via ECF and Electronic Mail)