**FOR PUBLICATION**

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

In Re:  Michael W. Goione & Kimberly W. Goione,

        Debtors.

Case No. 18-26805 (MBK)

Chapter 13

**APPEARANCES:**

Joseph Casello, Esq.
Collins, Vella & Casello
2317 Route 34 South
Suite 1A
Manasquan, NJ 08736
*Attorney for the Debtors*

Michael Kahme, Esq.
Mark A. Roney, Esq.
Hill Wallack LLP
21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543
*Attorney for Amboy Bank*

**MEMORANDUM DECISION**

      This matter comes before the Court upon the motion (the "Motion") filed by Amboy Bank ("Amboy") seeking an order determining the amount due Amboy from proceeds of the postbankruptcy sale of Michael and Kimberly Goione's (the "Debtors") former residence, and the cross-motion filed by Debtors seeking to reduce Amboy's payoff (the "Cross Motion"). The Court conducted hearings in this matter on November 19, 2018, and on November 29, 2018. The Court has received and reviewed the parties' initial and supplemental submissions, and has heard oral argument. For the reasons expressed below, the Court grants the Debtors' Cross Motion, in

part, and denies Amboy's Motion in part. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. § § 1334(a) and 157(a), and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B)&(O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## II. Summary of Issues

This case centers on a dispute over the correct amount due on first and second mortgage obligations owing to Amboy. Within this context, there are three areas of inquiry for the Court's consideration. The first set of issues is whether the merger doctrine, established under New Jersey common law, precludes Amboy from seeking interest at the contract rate, including the penalty interest rate, or, in the alternative, whether equitable considerations warrant disregarding the judgment rate of interest in the foreclosure judgement.[2] The remaining issues for examination are whether the Debtors' proposed treatment of the claims modifies Amboy's rights proscribed

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[2] Initially, the Debtors contested Amboy's demand for contractual attorneys fees; however, subsequent to the closing and the filing of the Motion, Debtors conceded that Amboy's entitlement to attorneys fees survived merger by express agreement of the parties.

by the anti-modification provisions set forth in 11 U.S.C. § 1322(b)(2)[3], and, in that event, whether the foreclosure judgments fall under the § 1322(c)(2) exception to § 1322(b)(2).

### III. Background and Procedural History

On January 4, 2008, the Debtors and Amboy executed a loan agreement and note in the amount of $750,000 to construct a single-family residential dwelling located at 46 Clay Street, Fair Haven, New Jersey (the "Property"). Also, on January 4, 2008, in order to secure the obligation under the note, the Debtors executed and delivered to Amboy a mortgage. On June 12, 2009, the Debtors executed and delivered a revolving credit loan agreement, a revolving credit note in the amount of $100,000 and a second mortgage on the Property. On November 28, 2010, the Debtors executed a revolving credit loan agreement and a revolving credit note, which replaced the 2009 revolving credit loan agreement and the 2009 revolving note in the original principal amount of $100,000.

The Debtors defaulted on both mortgages, and, on September 23, 2016, Amboy commenced a foreclosure action with respect to the Property in the Superior Court of New Jersey, Chancery Division, Monmouth County. The Debtors neither appeared in, nor contested the foreclosure action and the court entered a final judgment on May 11, 2017. Thereafter, the Monmouth County Sheriff scheduled a sale for the Property for August 28, 2017. On August 25, 2017, the Debtors filed their first chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. The Debtors' case was dismissed on September 22, 2017,

---

[3] All references hereinafter are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended.

for failure to file missing documents. Amboy caused the sale to be rescheduled to October 23, 2017.

On October 20, 2017, the Debtors again filed for bankruptcy under chapter 13. On December 14, 2017, Amboy filed a motion for relief from the automatic stay due to the Debtors' failure to make postpetition payments as required by their proposed chapter 13 plan. On January 12, 2018, the Court entered an order vacating the automatic stay in favor of Amboy. On February 5, 2018, the Debtors filed a motion to reinstate the automatic stay, which Amboy opposed. On February 26, 2018, the Court entered an order adjourning the motion to May 9, 2018, and reinstating the stay pending further order upon certain conditions, including maintenance of all required contractual obligations. On May 21, 2018, the Court entered another interim order continuing the stay upon certain conditions and continuing the motion to August 8, 2018. On August 8, 2018, the Debtors' motion to reinstate was denied. The second bankruptcy was dismissed on August 9, 2018. The sheriff's sale was then rescheduled to August 27, 2018. Five days before the rescheduled sheriff's sale, on August 22, 2018, the Debtors filed their third and current chapter 13 petition, along with an adversary complaint seeking to enjoin Amboy from proceeding with the sheriff's sale. This Court stayed the sheriff's sale until October 22, 2018, to allow Debtors to pursue a sale of the property.

Within a very short period of time after the third bankruptcy filing, the Debtors obtained an acceptable contract for the sale of the Property, which sale closed on October 31, 2018. In connection with the sale, Amboy provided Debtors with a payoff of its secured claim by letter dated October 5, 2018, good through October 31, 2018. The payoff reflected that Amboy had

4

incurred attorney's fees of $17,156.75 in the first and second bankruptcies and costs therein of $1,203.68. Through October 5, 2018, Amboy incurred additional fees of $8,925.00, and costs of $365.75 — excluding any costs and fees accrued after the filing of the Motion.

The Debtors objected to the interest rate Amboy had applied to its secured claim, as well as the demand for attorneys fees. Amboy seeks $1,038,268.99, whereas Debtors assert that application of the statutory judgment rate reduces the amount to $920,994.26, which was paid at closing. The parties could not resolve the interest dispute and escrowed the disputed portion of the closing proceeds, subject to resolution by this Court.

**IV. Amboy's Argument**

Amboy's argument is twofold. First, Amboy argues that as an oversecured creditor, it is entitled to interest on its claim, along with, "any reasonable fees, costs, or charges provided for under the agreement or state statute under which the claim arose," pursuant to § 506(b). Amboy also contends that to permit the postjudgment interest to accrue at the lower legal rate would confer an impermissible benefit on the Debtors who would in essence be rewarded for having defaulted on their legal obligations and having filed multiple bankruptcies to impede Amboy's collection efforts. Thus, Amboy believes, under the present factual circumstances, equity dictates that the outstanding obligation include the interest rate contemplated in the contract, as opposed to the judgment interest rate.

Amboy further contends that the Debtors' proposed plan seeks to modify its secured claims in real property that was the Debtors' principal residence. On that basis, Amboy submits that the proposed treatment should either not be allowed pursuant to § 1322(b)(2), or should be

permitted only under the limited exception found in § 1322(c)(2) allowing reinstatement and cure consistent with the terms provided in the note and mortgage.

### V. Debtors' Argument

The Debtors make three arguments in response to the Motion. First, the Debtors submit that in light of the merger of the mortgage obligations into the foreclosure judgment, the interest should be calculated at the legal rate set by New Jersey state court rule and specifically stated in the foreclosure judgment. N.J. Ct. R. R. 4:42-11. Second, the Debtors contend that Amboy should be judicially estopped from seeking the contract rate of interest. Third, the Debtors argue that Amboy is not entitled to additional fees for filing the Motion or responding to the Debtors' Cross Motion.

The Debtors have already paid Amboy the foreclosure judgment ― less the disputed interest amount. The Debtors posit that under New Jersey law, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. The Debtors submit that pursuant to the merger doctrine, Amboy should be precluded from demanding payment of the aggregate loan balance beyond the amount reflected in the judgment, and that the amount necessary to redeem the foreclosure judgment is the amount of the judgment, plus lawful interest accruing thereafter.

Furthermore, the Debtors believe that Amboy's positions taken throughout both the state foreclosure and bankruptcy cases should judicially estop Amboy from seeking the contract rate of interest. Amboy did not request interest at the contract rate in its application for final judgement in foreclosure, and the final judgment does not provide for interest at the contract rate.

Additionally, documents submitted by Amboy in a separate proceeding before this Court list the judgment rate as the rate of interest to be used in calculating the amount due and owing. *See* Cert. in Opp'n to Order to Show Cause, *Michael & Kimberly Goione v. Amboy Bank*, Adv. Pro. No. 18-01451, ECF No. 9.

Finally, the Debtors contend Amboy should not be awarded any additional attorneys fees in connection with this Motion. This Motion arises from Amboy's decision to ask this Court to amend the state court's foreclosure judgment to include the contractual interest rate. Amboy has stipulated to the legal interest rate in prior pleadings and has already been awarded $32,000 in legal fees and $24,000 in late charges. Under these circumstances, the Debtors believe that an award of additional attorneys fees would be inequitable, unreasonable and would prejudice the Debtors and other creditors of the bankruptcy estate.

## VI. Discussion

Based on the reasoning set forth below, the Court determines that the legal rate of interest ― not the contract rate ― is the appropriate rate to be applied in this case. Further, the Court determines that application of the judgment rate, in this case, does not impermissibly modify the rights of Amboy as proscribed under § 1322(b)(2), as the impairment of Amboy's contractual rights do not arise by virtue of Debtors' plan, but rather, by application of federal and state laws.

### A. Prejudice to Creditors

As an initial matter, the Court notes that the Internal Revenue Service ("IRS") holds a junior lien on the Property. Allowing Amboy to collect interest at the contract rate will

significantly impact the distribution the IRS would otherwise receive on its secured claim. The additional interest Amboy seeks will reduce the funds available for payment to the IRS.

### B. The Doctrine of Merger of Judgments

As a general principal, it is elementary that a judgment settles everything involved in the right to recover — all matters that were raised, and all those that might have been asserted. The original cause of action is absorbed into the judgment and becomes a new obligation. *In re Stendardo*, 991 F.2d 1089, 1094–95 (3d Cir. 1993), *as amended* (June 21, 1993). Thus, in the context of a foreclosure action, a mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished, at which point it ceases to exist. *Id*. at 1095. Thereafter, a mortgage can no longer serve as a basis for determining the obligations of the parties. Instead, litigants must look to the judgment. *Id*. (citing *In re Presque Isle Apartments,* 112 B.R. 744, 747 (Bankr. W.D. Pa. 1990); *see also In re Roach,* 824 F.2d 1370, 1377 (3d Cir. 1987). Bankruptcy courts have consistently held that the doctrine of merger entitles a postjudgment mortgagee to the legal rate of interest rather than the rate specified in the mortgage, because the mortgage's terms providing for the contractual interest rate no longer exist. *Id*.; *see also In re Shandar Holding Corp.*, No. 12-7336, 2013 WL 3810574, (D.N.J. July 22, 2013).

There is, however, a key exception to the merger doctrine. "Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *Stendardo*, 991 F.2d at 1095; *See also, e.g., Presque Isle,* 112 B.R. at 747 ("Once a claim is reduced to judgment, the legal rate of

interest applies unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment.").

In *In re Stendardo*, the Third Circuit recognized this exception in holding that obligations under a mortgage are merged into a foreclosure judgment unless "the mortgage clearly evidences [an] intent to preserve the effectiveness of that provision postjudgment." *Stendardo*, 991 F.2d at 1094. Notwithstanding this principle, the *Stendardo* court concluded that the creditor in that case was not entitled to reimbursement because the debtors' obligation under the mortgage ended when the mortgage merged into the judgment. *Id.* at 1095–96.

This Court is cognizant that *Stendardo* involved the application of Pennsylvania law. However, the Third Circuit has also addressed this issue in the context of a New Jersey proceeding. In *A&P Diversified*, the Third Circuit held that, "the mortgage merged into the final judgment of foreclosure and precluded any recovery of attorneys' fees." *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337, 343 (3d Cir. 2006). In doing so, the Third Circuit followed existing New Jersey decisions which recognized that upon foreclosure, the mortgage merges into final judgment of foreclosure and "every party . . . has the right to assume that such decree represents the final determination of the debt." *Colonial Bldg.-Loan Ass'n v. Mongiello Bros., Inc.*, 120 N.J. Eq. 270, 276 (Ch. 1936); *see Also Washington Mut., FA v. Wroblewski*, 396 N.J. Super. 144, 149 (Ch. Div. 2007). As further noted by Chancellor Kays in *Colonial Bldg.-Loan Ass'n*,

> It is quite obvious that such must be the law and that every party to the suit is bound thereby and has the right to assume that such decree represents the final determination of the debt and amount due thereafter as therein stated and that such debt draws legal interest from the date of record.

9

*Colonial Bldg.-Loan Ass'n*, *supra*, 120 N.J. Eq. at 275-276. In *A&P Diversified*, the Third Circuit reasoned that when the creditor moved for attorneys fees pursuant to § 506(b), it was no longer the beneficiary of an agreement under which a claim for attorneys fees arose, which was the basis for a § 506(b) award. *A & P Diversified*, 467 F.3d at 343. The court then examined the mortgage to determine whether the exception to the merger doctrine applied. *Id*. Again, the Third Circuit denied the requested fees and expenses, stating that,

> the mortgage here does not clearly evidence an intent to preserve the effectiveness of the attorneys' fees and expenses provision following the entry of the foreclosure judgment . . . . [T]he broad waiver language in the mortgage does not suffice to avoid the merger doctrine, and the exception to the merger doctrine therefore does not apply.

*Id*.

In this matter, the Court determines that the provisions in the mortgages allowing for a specific rate of interest merged with, and were extinguished by, the foreclosure judgment. Pursuant to the merger doctrine, the mortgages and their accompanying interest rates ceased to exist upon entry of the foreclosure judgment. The mortgages do not evidence an intent to preserve their effectiveness postjudgment with respect to the interest rate. While the mortgages each contain an anti-merger clause, neither provision contemplates preservation of the interest rate. As the drafter of the documents, Amboy, had it intended the interest rate to survive foreclosure, would have provided for as much in the anti-merger clauses. Moreover, the state court judgment explicitly provides for a legal rate of interest, and Amboy has had ample

10

opportunity, prior to the bankruptcy filing, to seek modification of the judgment. Thus, Amboy is no longer the beneficiary of an agreement under which the contractual interest rate arose, and there is no basis for a § 506(b) award.[4]

This Court further finds that the facts of this case do not warrant application of the common law equitable exception to the merger doctrine. Amboy, citing to decisions such as *Interchange State Bank v. Rinaldi* and *Brown v. Home Development Co.*, which provide for limited equitable exceptions to the merger doctrine, seeks to have this Court determine that the Debtors' conduct warrants employment of the contract rate, bottomed on equitable principles. *See Interchange State Bank v. Rinaldi*, 303 N.J. Super. 239, (App. Div. 1997); *Brown v. Home Development Co.*, 129 N.J. Eq. 172, (Ch. 1941). This Court is not prepared to venture down this road, in finding that merely filing bankruptcy, even on multiple occasions, supports the exercise of an equitable exception to the merger doctrine. A lawful, good faith effort to address a delinquent mortgage through bankruptcy is a privilege rooted in our Constitution and federal law, and standing alone cannot serve as such improper conduct warranting equitable relief.

Thus, this Court is satisfied that the mortgage obligations have merged with the foreclosure judgment, and the common law exception to the merger doctrine does not apply. As discussed below, absent cure and reinstatement of the underlying mortgage obligations, pursuant to § 1322(c)(1), the legal rate of interest remains appropriate in this case.

---

[4] This ruling is limited to Amboy's request for application of the contract rate of interest. As Debtors have conceded, the loan documents do establish an intent to permit Amboy to collect postjudgment attorneys fees and costs.

### C. Application of Anti-Modification Provision in § 1322(b)(2) and Exceptions Under § § 1322(c)(1) and (2)

Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C.A. § 1322. However, § 1322(c)(2) carves out an exception to § 1322(b)(2) in providing that:

> **(c)** Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> . . .
>
>> **(2)** in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C.A. § 1322. Courts have struggled with the issue of whether the phrase "last payment on the original payment schedule" encompasses foreclosure judgments on mortgages whose maturity date falls after the final payment under the Chapter 13 plan is due.

In *Nepil*, the court determined that the phrase "last payment on the original payment schedule" in § 1322(c)(2) should be read to include such foreclosure judgments. *In re Nepil*, 206 B.R. 72, 74 (Bankr. D.N.J. 1997). The court in *Nepil* explained that § 1322(c)(2) was designed to afford debtors in chapter 13 a greater opportunity to form flexible payment plans in order to save their homes. *Nepil*, 206 B.R. at 75. The court concluded that:

> As a practical matter this Court can discern no difference among a fully matured mortgage debt, a mortgage on which the balloon payment is due, and a foreclosure judgment. In each circumstance the holder of the obligation is entitled to immediate full payment. Given the overall objectives of Chapter 13, the fact that the 1994 Amendments express a particular concern that debtors be afforded opportunity to save their homes, and that no practical difference exists between the rights of holders of matured mortgage obligations and holders of foreclosure judgments, the Court construes the language of § 1322(c)(2) to include foreclosure judgments.

*Id.* at 76. The court ultimately held that the debtors were entitled to pay the foreclosure judgment over the life of their plan, notwithstanding the duration of the underlying mortgage.

The court in *In re Rowe* disagreed with the *Nepil* court's decision and held that, "the 'last payment' language of § 1322(c)(2) refers to the date of the last payment on the original note rather than the date the accelerated debt is due." *In re Rowe*, 239 B.R. 44, 50 (Bankr. D.N.J. 1999). The court did not extend the scope of § 1322(c)(2) to include a foreclosure judgment on a mortgage whose final payment is due after the final payment of the chapter 13 Plan. *Id*. Unlike *Nepil*, the *Rowe* court viewed the words "original payment schedule" as an obvious reference to the last payment due under the original note, reasoning that if Congress had intended to include foreclosure judgments in § 1322(c)(2), it would have omitted the phrase "original payment schedule." *Id*. The court relied, *inter alia*, on *Collier's*, which said:

> Because the plan may not extend beyond five years, this section will encompass short term mortgages, long term mortgages on which the debtor has nearly completed payments, and mortgages with balloon payments. Congress obviously believed that debtors with such mortgages needed additional protection. Short-term mortgages and balloon payment mortgages often have high rates or terms that are particularly unfavorable, which Congress has deemed deserving of close scrutiny. And debtors nearing the end of a long-term mortgage often have large amounts of equity that could be lost in a foreclosure.

*Id*. at 51 (citing *Collier on Bankruptcy* ¶ 1322.16 (L. King 15th ed. 1987 Revised)).

Again, in *In re Barbone* the debtors sought to implement the § 1322(c)(2) exception for a foreclosure judgment, despite the fact that the last payment on the original payment schedule of the mortgage came due after the conclusion of their chapter 13 plan. *In re Barbone*, No. 5-13-AP-00271-JJT, 2014 WL 4976822, (Bankr. M.D. Pa. Oct. 3, 2014). The debtors based their argument on the premise that because the mortgagee "accelerated the mortgage balance pursuant to the terms of its mortgage, its mortgage became subject to modification" pursuant to § 1322(c)(2). *Id*. at 1. The court held that the simple acceleration of the mortgage would not change the original payment schedule of the claim and had no bearing on whether the last payment under the mortgage came due during the term of the plan. *Id*. Consequently, the debtors were precluded from using the § 1322(c)(2) exception. *Id*. This Court is guided by *Rowe* and *Barbone* and determines that § 1322(c)(2) does not encompass mortgages that have been reduced to foreclosure judgments. As discussed below, Debtors cannot employ § 1322(c)(2) to circumvent the § 1322(b)(2) prohibition on modifying secured claims.

To begin with, the Debtors are not entitled to the special consideration given mortgagors under § 1322(c)(2), as the mortgage obligations do not fall into one of the three categories deemed by congress to warrant extra protection. The *Rowe* decision states that, "the 'last payment' language of section 1322(c)(2) refers to the date of the last payment on the original note rather than the date the accelerated debt is due." *Rowe*, 239 B.R. at 50. Because the § 1322(c)(2) exception is constricted to shield only those mortgagors whose last payment comes due within the life of a chapter 13 plan, there are only three scenarios in which it is applicable: (1) short term mortgages, (2) long term mortgages on which the debtor is within five years of

completing payments; and (3) mortgages with balloon payments. The Debtors do not fall into any of these categories. Rather, the Debtors' options are limited to utilizing § 1322(c)(1), which Congress crafted to address decisions such as *Roach* and *Perry* in which courts had relied upon the merger doctrine in ruling that the entry of a foreclosure judgment precludes a debtor's ability to reinstate the underlying mortgage under a chapter 13 plan. *See Roach,* 824 F.2d 1370; *In re Perry*, No. 89-07005, 1990 WL 159975, at *6 (D.N.J. Oct. 1, 1990), *aff'd sub nom. First Nat. Fid. Corp. v. Perry*, 945 F.2d 61 (3d Cir. 1991). As a result of Congressional action in 1994, under § 1322(c)(1), notwithstanding a foreclosure judgment, a debtor can cure and reinstate the mortgage subject, however, to satisfying their existing contractual obligations — **which include contract and default interest, and payment of attorneys fees**. In sum, were the Debtors seeking to modify Amboy's rights under a chapter 13 plan, which would include any delay in payment of all sums due under the foreclosure judgment, such modification would be limited to curing arrears and reinstating the mortgages consistent with all contract terms, as permitted under § 1322(c)(1).[5] That is not, however, the situation presented to the Court.

The Debtors in this case have not modified Amboy's rights under their plan, as the closing on the sale and satisfaction of Amboy's claim has occurred prior to confirmation. Accordingly, the bar against modification of secured claims found in § 1322(b)(2) does not apply and the issue as to application of either § 1322(c)(1) or (c)(2) is of no import.

---

[5] To be clear, the Debtors' plan is not one seeking cure and reinstatement; rather, the plan provides for a sale of the property by March 1, 2019. The plan has not been confirmed. Fortunately for all parties, the sale of the Property closed preconfirmation. The Court would not and will not confirm a plan which contravenes § 1322(b)(2), for the reason discussed herein.

15

### D. Attorneys Fees

As discussed, Amboy contractually preserved its right to seek attorneys fees, as provided under the loan documents, notwithstanding the merger of the loan obligations into the foreclosure judgment. The issues presented by this matter, while not necessarily complex, are unsettled in the Circuit. As such, Amboy's efforts to seek recovery of the additional interest and attorneys fees were well within reason and appropriate. Notwithstanding, the sum at issue and the ease in which this matter could have been resolved outside of court, warrant payment of attorneys fees in a reduced amount.

## VII. Conclusion

For the aforementioned reasons, Amboy's Motion is denied in part, and Amboy is awarded the sum of $12,000 in attorneys fees. The Court will grant the balance of Debtors' Cross Motion. Debtors' counsel is directed to submit a form of order.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: January 8, 2019

16